**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD A. SILVA, | ) | No. ED CV 09-1648-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 2, 2009, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on September 25, 2009, and October 7, 2009.  The parties filed a Joint Stipulation on July 6, 2010, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

**II.**

## BACKGROUND

Plaintiff was born on September 10, 1974. [Administrative Record ("AR") at 47, 87.] He has completed high school, and has past relevant work experience as a "material handler, warehouse worker, . . . plaster mixer-finisher, stocker-loader, and soldier." [Id. at 19-20, 127-34, 170.]

Plaintiff filed his application for Disability Insurance Benefits on February 15, 2007, alleging that he has been unable to work since May 4, 2006, because of "[l]umbar disc displacement (tear in disc), anterior posterior lumbar fusion[,] L3-L4 disc no fluid[,] [l]umbosac disc degeneration stenosis lumbar[,] [and] [a]nxiety[.]" [Id. at 14, 87-93, 104.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [Id. at 49-53, 55-59, 61.] A hearing was held on August 29, 2008, at which plaintiff appeared with counsel and testified on his own behalf. [Id. at 22-46.] A vocational expert also testified at the hearing. [Id. at 36-43.]

On October 20, 2008, the ALJ determined that plaintiff was not disabled. [Id. at 12-21.] When the Appeals Council denied plaintiff's request for review of the hearing decision on May 7, 2009, the ALJ's decision became the final decision of the Commissioner. [Id. at 3-5.] This action followed.

### III.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

1    sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

2    and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

3    past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

4    case of disability is established.  The Commissioner then bears the burden of establishing that the

5    claimant is not disabled, because he can perform other substantial gainful work available in the

6    national economy.   The determination of this issue comprises the fifth and final step in the

7    sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d

8    at 1257.

9

10   **B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

11         At step one, the ALJ found that plaintiff did not engage in any substantial gainful activity

12   since May 4, 2006, the alleged onset date of disability.  [AR at 16.]  The ALJ also concluded that

13   plaintiff "meets the insured status requirements of the Social Security Act through December 31,

14   2010." [Id.]  At step two, the ALJ determined that plaintiff has the following severe impairments:

15   "disc desiccation and protrusion, L4-L5, with lateral recess stenosis, left greater than right,

16   degenerative disc disease and disc desiccation, L5-S1, with disc protrusion, and adjustment

17   disorder, mild, with mixed emotions[.]"  [Id.]  At step three, the ALJ concluded that plaintiff's

18   impairments do not, either individually or in combination, meet or equal any of the impairments

19   listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  [Id. at 17.]  The ALJ further found that

20   plaintiff retained "the residual functional capacity[1] to perform sedentary work[2] as defined in 20

21   [C.F.R. §] 404.1567(a) except alternate sitting, standing, and walking, use a walker or cane when

22   on feet for more than a couple of steps by a work station, simple repetitive tasks, and no fast

23   _____

24        1   Residual functional capacity ("RFC") is what a claimant can still do despite existing
     exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir.
25   1989).

26        2   "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
     or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
27   as one which involves sitting, a certain amount of walking and standing is often necessary in
     carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and
28   other sedentary criteria are met."  20 C.F.R. §§ 404.1567, 416.967.

1  paced work like rapid assembly line work." [Id.]  At step four, the ALJ found that plaintiff, through

2  the date last insured, could not perform his past relevant work.  [Id. at 19.]  At step five, the ALJ

3  determined that "[c]onsidering [plaintiff's] age, education, work experience, and residual functional

4  capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can

5  perform[.]" [Id. at 20.]  Accordingly, the ALJ concluded that plaintiff is not disabled.  [Id. at 21.]

6

7                                               **V.**

8                                  **THE ALJ'S DECISION**

9          Plaintiff contends that 1) the ALJ improperly rejected plaintiff's credibility; and 2) plaintiff's

10  need for a walker to ambulate should "result[] in a finding of disabled under the equivalence theory

11  under Listing 1.04C."  [Joint Stipulation ("JS") at 3-4 (citation omitted).]

12

13  **A.       PLAINTIFF'S CREDIBILITY**

14          Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting

15  his credibility.  [Id. at 3.]  The Court disagrees.

16          The ALJ must make explicit credibility findings whenever he discredits a plaintiff's

17  testimony.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  The ALJ can only reject

18  a claimant's testimony "upon (1) finding evidence of malingering, or (2) expressing clear and

19  convincing reasons for doing so."[3]  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see

20  also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("'General findings are insufficient;

21  rather, the ALJ must identify what testimony is not credible and what evidence undermines

22  [plaintiff's] complaints.'" (citation omitted)).  Once plaintiff has proven an underlying medical

23  impairment, his testimony cannot be rejected "solely because the available objective medical

24  evidence does not substantiate [his] statements." 20 C.F.R. §§ 404.1529, 416.929; Reddick, 157

25  F.3d at 722 (citation omitted).  Factors that weigh in determining plaintiff's credibility include

26  _____

27          [3]    In the Joint Stipulation, defendant asserts that plaintiff was malingering.  [JS at 11-12.]  The
   ALJ did not make such an assertion in his decision.  [AR at 12-21.]  Because the Court finds that

28  the ALJ provided clear and convincing reasons for rejecting plaintiff's credibility, the Court does
   not address the issue of whether plaintiff was malingering.

plaintiff's reputation for truthfulness, daily activities, work record, inconsistencies in plaintiff's testimony itself, inconsistencies between plaintiff's testimony and conduct, and inconsistencies between plaintiff's testimony and "'testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).  If the ALJ's credibility determination is properly supported, it is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986); see also Thomas, 278 F.3d at 959 (citation omitted).

Here, despite finding that plaintiff's medical impairments could reasonably produce the symptoms plaintiff alleged, the ALJ found that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment[.]"  [AR at 18.]  The ALJ supported his credibility determination by finding that plaintiff's testimony was inconsistent with and unsupported by  the medical evidence.  [Id. at 17-18.]  If supported by the evidence, an ALJ can properly find a plaintiff to be incredible on those grounds.  See Thomas, 278 F.3d at 958-59; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (the ALJ can consider a lack of objective medical evidence as a factor for finding plaintiff incredible (citation omitted)).

Plaintiff claimed that he began using a walker for balance around September 2007,[4] and that without a walker, he is only able to walk "maybe six to eight feet" before he loses his balance because his "legs give out."  [AR at 28, 30, 37.]  The ALJ pointed out that "there is no evidence of any impairment of balance[.]"  [Id. at 18.]  The ALJ also cited the April 2007, opinion of Dr. David Siambanes, plaintiff's treating physician, who reported that plaintiff "is able to walk without any supportive device . . . [and] does not appear to have any discomfort with walking."[5]  [Id. at 18, 267.]

---

[4]    Plaintiff claimed at his hearing on August 29, 2008, that he began using a walker "about 11 months ago."  [AR at 37.]  The record further reflects that Dr. Thomas W. Jackson observed that plaintiff came in with a walker on August 15, 2007.  [Id. at 249.]

[5]    The ALJ also noted that Dr. Siambanes did not "endorse[] [plaintiff's] use of a walker even though it was used during [plaintiff's] physical examination" in March 2008.  [AR at 18, 257-62.]

1    The ALJ properly found that the medical evidence is inconsistent with plaintiff's alleged

2    need for a walker.  Plaintiff's treating physicians, Dr. Dana R. Johnson[6] and Dr. Siambanes,

3    consistently opined that plaintiff is able to walk without a supportive device.  [Id. at 206, 255, 267,

4    278, 295.]  Dr. Johnson reported that plaintiff "was observed ambulating to clinic with no apparent

5    difficulty."[7]  [Id. at 206, 295.]  Dr. Siambanes reported on three different occasions (December 13,

6    2006,  April 26, 2007, and July 24, 2007), that plaintiff can walk without the need of any supportive

7    device.  [Id. at 255, 267, 278.]  In fact, even though Dr. Siambanes noted on July 24, 2007, that

8    plaintiff "would benefit from a rotator cane to provide safety while staying involved with life[,]" he

9    also reported on the same day that plaintiff "is able to walk without any supportive device . . . [and]

10   does not appear to have any discomfort with walking."  [Id. at 255-56.]  Dr. Siambanes' consistent

11   findings that plaintiff did not need a walker supports the ALJ's conclusion that the doctor's

12   suggestion that plaintiff may "benefit from a rotator cane" is not evidence that the doctor actually

13   found plaintiff to require a walker.[8]  [See id. at 17 (the ALJ found that his "treating physician

14   prescribed the walker on the basis of [plaintiff's] subjective complaints.").]

15   In addition, two other doctors, Dr. Thomas W. Jackson and Dr. Keith A. Hamilton,

16   specifically found that even though plaintiff used a walker, he did not actually need it to ambulate

17   effectively.  [Id. at 249, 352.]  Dr. Jackson found on August 15, 2007, that even though plaintiff

18   "[came] in with a walker for ambulation, . . . he can walk without it" [id. at 249], and Dr. Hamilton

19

20   [6]  Dr. Johnson began treating plaintiff in May 2006.  [AR at 107, 193.]  Plaintiff reports that he
     saw Dr. Johnson every three to four weeks for his work injuries over a period of four to six months.

21   [Id. at 44.]  During his time treating plaintiff, Dr. Johnson ordered CT and MRI scans [id. at 193,
     196], prescribed epidural injections and medications [id. at 203, 206], conducted Waddell tests and

22   physical examinations [id. at 195, 203, 295-96, 316], and reviewed plaintiff's progress in physical
     therapy.  [Id. at 206, 214.]

23

24   [7]  Dr. Johnson made that observation on August 7, 2006, and never made any statements
     thereafter that would suggest plaintiff needed a walker.  [AR at 206, 295.]

25   [8]  In fact, the Court cannot find any evidence in the record where a doctor prescribed plaintiff

26   a walker.  Neither does plaintiff reference the need for a walker other than his own testimony.  [JS
     at 4.]  Indeed, based on plaintiff's testimony, it appears that if Dr. Siambanes did prescribe plaintiff

27   a walker, it was based on plaintiff's subjective complaints.  Plaintiff claimed that "[w]hen I . . .
     talked with my doctor and I told that I had fallen at the house . . . he felt that he needed to give me

28   something to get around the house better, and to prevent me from falling."  [AR at 37.]

found on November 11, 2007, that while plaintiff used a walker to ambulate, he "has not been true non-weight bearing." [Id. at 352.] Thus, the unanimous opinion of plaintiff's physicians is that plaintiff did not require a walker to ambulate effectively. The ALJ properly cited the inconsistencies between plaintiff's physicians' reports and plaintiff's testimony as a reason for rejecting plaintiff's credibility. See Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting [plaintiff's] subjective testimony." (citation omitted)); Thomas, 278 F.3d at 958-59 (the ALJ can consider inconsistencies between plaintiff's testimony and his physicians' testimony "concerning the nature, severity, and effect of the symptoms of which [plaintiff] complains" as a valid basis for finding plaintiff incredible).

The Court also concludes that there does not appear to be any evidence in the record, other than plaintiff's own testimony, that supports plaintiff's claim that he is unable to ambulate effectively without a walker.[9] [AR at 28, 30.] Since plaintiff cited only his own testimony[10] and the

---

[9] Plaintiff argues that the results of his discogram test show that he has "positive concordant severe pain in the lumbar spine[,]" which may "potentially caus[e] the inability to ambulate effectively as demonstrated by the need for a walker." [JS at 6, citing AR at 343.] However, three of plaintiff's physicians were already aware of his lower back pain at the time they opined that plaintiff did not require a walker for ambulation. Dr. Siambanes was aware from December 13, 2006, that plaintiff had lower back pain, yet opined later that day and on two other occasions that plaintiff can ambulate without a walker. [AR at 255, 267, 278.] Notably, even after Dr. Siambanes analyzed the discogram test results on Feburary 28, 2008, though he discussed the option of surgery, he did not opine then, or later when he examined plaintiff on March 27, 2008, that plaintiff required a walker for ambulation. [Id. at 333-38, 341-42.] Similarly, Dr. Jackson stated on August 15, 2007, that "the source of [plaintiff's] pain . . . is likely the discs [(L4-5 and L5-S1),]" and that while he "is actually anticipating that both L4-5 and L5-S1 would be positive by the discogram test, . . . the discogram test [should] be actually performed to confirm this assumption." [Id. at 253.] Despite knowing about plaintiff's back pain, and assuming a positive discogram test, Dr. Jackson still found that even though plaintiff used a walker to ambulate, "he can walk without it." [Id. at 249.] Lastly, even though Dr. Johnson prescribed plaintiff with epidural injections for his back pain, he never found plaintiff to be unable to ambulate effectively without a walker. [Id. at 203, 206.] Since three physicians were aware of plaintiff's pain -- and one even assumed before the fact that the discogram test would be positive -- but still did not find that he required a walker for ambulation, the positive test result does not alter the Court's assessment that the ALJ properly rejected plaintiff's testimony. [Id. at 18.]

[10] Plaintiff argues that his need for a walker is supported because there is evidence that his "legs have been buckling" and he "experienc[es] constant pain radiating down both legs." [JS at 5-6, citing AR at 214, 248.] However, the Court notes that both of these claims were made by plaintiff himself, rather than being observed and made by plaintiff's physicians. [AR at 214, 248.]

1    results of a discogram test in contending that he needs a walker, rather than a physician's finding

2    that he needs a walker, the ALJ properly discredited plaintiff's testimony based on a lack of

3    supporting objective medical evidence.  See Rashad, 903 F.2d at 1231 (the ALJ can properly

4    "disregard [plaintiff's] self-serving statements if they are unsupported by objective evidence.");

5    Rollins, 261 F.3d at 857; [JS at 4, citing AR at 28, 37-38.][11]

6         The ALJ properly rejected plaintiff's testimony based on inconsistencies between plaintiff's

7    testimony of the severity of his limitations and that found by his physicians, and a lack of

8    supporting objective medical evidence.  Remand is not warranted on this issue.  Fair v. Bowen,

9    885 F.2d 597, 604 (9th Cir. 1989) ("Credibility determinations are the province of the ALJ" (citation

10   omitted), and where the ALJ's "findings are supported by substantial evidence in the record, [the

11   Court's] role is not to second-guess that decision.").

12

13   **B.    LISTED IMPAIRMENTS**

14        Plaintiff contends that he meets the requirements to qualify for a finding of disability under

15   20 C.F.R., Part 404, Subpt. P, App. 1, § 1.04C (lumbar spinal stenosis).  [JS at 4.]

16        The ALJ found that the severity of plaintiff's spinal disorder did not meet or equal the

17   requirements of Listing 1.04.  [AR at 17.]  Specifically, he found that there is no medical evidence

18   that supports plaintiff's use of a walker, no "consistent finding of motor deficits being in an

19   anatomical pattern, and . . . no report of any reflex deficits."  [Id.]

20        At step three, the ALJ must determine whether plaintiff's "impairment meets or equals an

21   impairment listed in Appendix 1 to Subpart P of Regulations No. 4."  Tackett v. Apfel, 180 F.3d

22   1094, 1099 (9th Cir. 1999).  To meet or equal the Listing, plaintiff must establish that he meets all

23   the characteristics of a listed impairment.  Id.  Section 1.04C, the Listing plaintiff claims he meets,

24   requires a finding of disability for an individual with "[l]umbar spinal stenosis resulting in

25   pseudoclaudication, established by findings on appropriate medically acceptable imaging,

26   _____

27        [11]   While the ALJ may not reject plaintiff's credibility solely on the basis of lack of corroborating medical evidence, he can properly consider that factor as a basis for finding plaintiff incredible.

28   See Rollins, 261 F.3d at 857.  As discussed above, the ALJ provided another valid reason for rejecting plaintiff's credibility.

1   manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

2   effectively, as defined in 1.00B2b."  20 C.F.R., Part 404, Subpt. P, App. 1, § 1.04C.  An inability

3   to ambulate effectively is generally defined

4           as having insufficient lower extremity functioning (see 1.00J) to permit independent
        ambulation without the use of a hand-held assistive device(s) that limits the
5           functioning of both upper extremities . . . . To ambulate effectively, individuals must
        be capable of sustaining a reasonable walking pace over a sufficient distance to be
6           able to carry out activities of daily living.  They must have the ability to travel without
        companion assistance to and from a place of employment or school.

7

8   Id. at 1.00B.  An "example[] of ineffective ambulation [is] . . . the inability to walk without the use

9   of a walker[.]"  Id.  In support of his position, plaintiff points to his testimony that "he is unable to

10   walk without a walker because otherwise he loses his balance, and falls down."  [JS at 4, citing

11   AR at 28.]  He further asserts that his "need for a walker demonstrates an inability to ambulate

12   effectively . . . [which should] result[] in a finding of disabled under the equivalence theory under

13   Listing 1.04C."  [Id., citing 20 C.F.R., Part 404, Subpt. P, App. 1, §§ 1.00B, 1.04C.]

14           Plaintiff's only evidence that he meets the Listing is his assertion that he needs to use a

15   walker prescribed by his physician.  [JS at 4, citing AR at 28, 37-38.]  As noted above, however,

16   he does not explain how the ALJ improperly considered his physicians' unanimous finding that he

17   does not need a walker, and cites no evidence, other than his own testimony, to support the need

18   for a walker.  [Id.]  Given that the ALJ properly rejected plaintiff's credibility, plaintiff's testimony

19   that he needs a walker, without more, is insufficient to support a finding that plaintiff cannot

20   ambulate effectively without one.  Because plaintiff has not proven that he requires a walker for

21   effective ambulation, he has not established all of the characteristics of the impairment defined

22   by Section 1.04C.  Accordingly, the ALJ properly found that plaintiff did not meet or equal the

23   Listing.  Tackett, 180 F.3d at 1099; [AR at 17.]  Remand is not warranted on this issue.

24   /

25   /

26   /

27

28

1

## VI.

2

## CONCLUSION

3       **IT IS HEREBY ORDERED** that: (1) plaintiff's request for reversal, or in the alternative,

4  remand, is **denied**; (2) the decision of the Commissioner is **affirmed**.

5       **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

6  Judgment herein on all parties or their counsel.

7       **This Memorandum Opinion and Order is not intended for publication, nor is it**

8  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

9

10

11  DATED: August 2, 2010

12                                                    _____
                                                              PAUL L. ABRAMS
13                                                   UNITED STATES MAGISTRATE JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28